UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE COMPANY<br>As Subrogree of Jon and Abby Winkelreid<br>200 S. 6th Street<br>Suite 1000<br>Minneapolis, Minnesota 55402-1470<br><br>    Plaintiff<br><br>v.<br><br>FERGUSON & SHAMAMIAN ARCHITECTS, LLP<br>270 Lafayette Street<br>Suite 300<br>New York, New York 10012<br><br>and<br><br>W.B. MARDEN COMPANY<br>2 Milk Street<br>Nantucket, Massachusetts 02554<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-CV-10165-RGS<br><br><br><br><br>***ORAL ARGUMENT REQUESTED*** |

## THE DEFENDANT/THIRD-PARTY PLAINTIFF FERGUSON & SHAMAMIAN ARCHITECTS, LLP'S MOTION FOR SUMMARY JUDGMENT AND FOR THE ENTRY OF SEPARATE AND FINAL JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the defendant/third-party plaintiff, Ferguson & Shamamian Architects, LLP ("Ferguson & Shamamian"), respectfully moves for summary judgment as to the Complaint filed by the plaintiff, Great Northern Insurance Company, as subrogree of Jon and Abby Winkelreid (the "plaintiff"). There are no disputed facts and Ferguson & Shamamian is entitled to summary judgment as a matter of law. In particular, the contract between the plaintiff's insureds, the Winkelreids, and Ferguson & Shamamian required that the Winkelreids provide written notice of any claim against Ferguson & Shamamian within

30 days after such claim arose on the project or the claim would be deemed waived. The Winkelreids failed to give such notice.

Further, pursuant to Fed. R. Civ. P. 54(b), Ferguson & Shamamian requests that this Court direct the clerk to enter separate and final judgment in Ferguson & Shamamian's favor because there is no just reason for delay.

In support of this motion, Ferguson & Shamamian relies on the accompanying Memorandum of Law in Support of its Motion for Summary Judgment and for the Entry of Separate and Final Judgment, its Statement of Undisputed Material Facts, the Affidavits of Jay S. Gregory and Oscar Shamamian, and the following exhibits (attached hereto):

| | | |
|---|---|---|
| Exhibit A: | Complaint, dated January 27, 2005 | |
| Exhibit B: | Rule 14(a) Complaint, dated September 12, 2005 | |
| Exhibit C: | Contract between the Winkelreids and Ferguson & Shamamian, dated March 30, 1999 | |
| Exhibit D: | Letter from the plaintiff's counsel to Ferguson & Shamamian providing written notice of a potential claim regarding the water loss, dated March 1, 2004 | |

WHEREFORE, for the foregoing reasons Ferguson & Shamamian respectfully requests that the Court enter summary judgment on all counts and direct the clerk to enter separate and final judgment in Ferguson & Shamamian's favor.

## REQUEST FOR ORAL ARGUMENT

Ferguson & Shamamian respectfully requests that the Court hold a hearing on this motion for summary judgment. Ferguson & Shamamian states that a hearing would assist the Court in

rendering its decision on this motion.

Respectfully submitted,
FERGUSON & SHAMAMIAN
ARCHITECTS, LLP,
By its attorneys,

David J. Hatem, PC, BBO #225700
Jay S. Gregory, BBO #546708
Deborah F. Schwartz, BBO #658278
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
Tel: (617)406-4500

Dated: October 28, 2005

## CERTIFICATE OF SERVICE

I, Deborah F. Schwartz, Esquire, hereby certify that on this 28th day of October, 2005, I served the attached *The Defendant/Third-Party Plaintiff Ferguson & Shamamian Architects, LLP's Motion for Summary Judgment for the Entry of Separate and Final Judgment* by mailing a copy thereof, postage pre-paid to:

Patrick J. Loftus, III, Esquire
Law Office of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA 02108
Counsel for Plaintiff

Robert M. Caplan, Esquire
Cozen and O'Connor
1900 Market Street
Philadelphia, PA 19103

Francis J. Lynch, Esquire
John F. Gleavy, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thirty Acre Wood LLC
7 Thirty Acres Lane
Nantucket, MA 02554

Martin S. Cosgrove
Cosgrove, Eisenberg and Kiley, P.C.
803 Hancock Street
P.O. Box 189
Qincy, MA 02170

Deborah F. Schwartz, Esquire

00945799

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 27  P 3: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

---

GREAT NORTHERN INSURANCE COMPANY
as Subrogee of Jon and Abby Winkelreid
200 S. 6th Street
Suite 1000
Minneapolis, Minnesota 55402-1470

:
:
:
:
:

CIVIL ACTION NO:

vs.

05c 10165 RGS

FERGUSON & SHAMAMIAN ARCHITECTS, LLP
270 Lafayette Street
Suite 300
New York, New York 10012

and

W.B. MARDEN, COMPANY
2 Mill Street
Nantucket, Massachusetts 02554

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

---

## COMPLAINT

Plaintiff, Great Northern Insurance Company a/s/o of Jon and Abby Winkelreid, by and

through its attorneys Cozen O'Connor, upon information and belief, hereby alleges the

following:

## PARTIES

1.      Plaintiff, Great Northern Insurance Company (hereinafter "Great Northern"), is a

Minnesota Corporation, with its principal place of business located at 200 S. 6th St., Suite 1000,

Minneapolis, Minnesota 55402-1470, and at all times material hereto was authorized to issue

insurance policies in the Commonwealth of Massachusetts.

2.      At all times material hereto, Great Northern insureds Jon and Abby Winkelreid (hereinafter "the plaintiff's insureds" or "the Winkelreids"), were individuals and owners of the property located at 15 Cathcart Road, Nantucket, Massachusetts (hereinafter "the subject property").

3.      Defendant, Ferguson and Shamamian Architects, LLP (hereinafter "Ferguson), is a New York Corporation, with its principal place of business located at 270 Lafayette Street, Suite 300, New York, NY and at all times material hereto was engaged in the business of, *inter alia*, customized building design.

4.      Defendant, W.B. Marden Co. (hereinafter "Marden"), is a business entity licensed and authorized to do business in the Commonwealth of Massachusetts, with its principal place of business located at 2 Milk Street, Nantucket, Massachusetts and at all times material hereto was engaged in the business of, *inter alia*, providing residential plumbing and heating contracting services.

## JURISDICTION AND VENUE

5.      Jurisdiction is invoked under the provisions of 28 U.S.C. §1332 as this is an action between citizens of different states.

6.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-five Thousand ($75,000.00) Dollars.

7.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

8.      At all times material hereto, the Winkelreids owned the subject property.

2

9. At all times material hereto, plaintiff provided property insurance coverage under policy No. 11574766-08 (hereinafter "subject policy") to the Winkelreids insuring its real and personal property at the subject premises.

10. Prior to January 19, 2004, plaintiff's insureds contracted with defendant Ferguson to design the subject property.

11. Prior to January 19, 2004, defendant Marden was contracted to provide plumbing services, including but not limited to, the installation of domestic water lines in the subject premises during its construction.

12. On or about January 19, 2004, a domestic water pipe located in an unheated void space adjacent to the chimney chase in the subject premises froze and subsequently ruptured.

13. This incident occurred because the domestic water pipe was improperly installed in an area exposed to foreseeably cold and freezing temperatures.

14. As a direct consequence of this frozen and ruptured domestic water pipe, water flooded portions of the premises causing severe and extensive damage to the subject premises and its contents.

15. Pursuant to the terms and conditions of the subject insurance policy, Great Northern made payments to its insured for the damages sustained in the amount of Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72).

16.    In accordance with the common law principles of legal and equitable subrogation, Great Northern is subrogated to the rights of its insureds with respect to the damages compensable under the policy.

## COUNT I

## PLAINTIFF v. DEFENDANT FERGUSON & SHAMAMIAN ARCHITECTS, LLP

## NEGLIGENCE

17.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 16 as if the same were fully set forth at length herein.

18.    The damages sustained in this loss were the direct result of the negligence, carelessness and/or reckless conduct of the personnel and/or agents of defendant Ferguson and Shamamian Architects, LLP, including but not limited to the following ways:

(a)    Failing to properly design the subject property;

(b)    Failing to ensure that the subject property was free of latent defects;

(c)    Failing to properly and safely perform design activities at the subject property thereby increasing the risk of hazards occurring thereto, including water damage;

(d)    Failing to properly, adequately and safely design, engineer, build and/or construct the attic space of the subject property;

(e)    Failing to perform its design and architectural work and services in accordance with the terms, conditions and provisions of all applicable written and/or oral contracts, agreements, plans and specifications;

(f)    Failing to properly, adequately and safely design, engineer, build and/or construct the plumbing system of the subject property;

(g)    Violating statutes, codes and industry standards during the design of the subject property including, but not limited to, violations regarding the design, engineering and construction of the subject property including, but not limited to, failing to install required insulation and/or heating to

4

portions of the subject property that would be exposed to air temperatures at or below freezing;

(h)    Failing to exercise reasonable care in the performance of the design of the subject property;

(i)    Failing to use due care and skill under the circumstances; and

(j)    Such other and further negligent acts or omissions which may be revealed through discovery.

19.    As a direct and proximate result of the aforesaid negligence, carelessness and/or negligent acts and/or omissions of defendant Ferguson, the domestic water pipe froze and ruptured, resulting in substantial damages to the Winkelreids' real and personal property.

20.    Pursuant to the terms and conditions of the subject insurance policy, Great Northern did make payments to its insureds for the damages so sustained, the total amount of those payments being Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72).

21.    In accordance with the common law principles of legal and equitable subrogation, Great Northern is subrogated to the rights of its insured with respect to the damages compensable under the policy.

WHEREFORE, plaintiff, Great Northern Insurance Company a/s/o Jon and Abby Winkelreid, demands judgment in its favor and against defendant, Ferguson and Shamamian Architects, LLP, in the amount of Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72) together with interest and costs of this action.

<u>COUNT II</u>

<u>PLAINTIFF v. DEFENDANT W.B. MARDEN COMPANY</u>

<u>NEGLIGENCE</u>

22.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 21 as if the same were fully set forth at length herein.

23.    The damages sustained in this loss were the direct result of the negligence, carelessness and/or reckless conduct of the personnel and/or agents of defendant W.B. Marden Company, including but not limited to the following ways:

(a)    Failing to properly perform construction, installation and/or maintenance of the domestic water lines in the subject property;

(b)    Failing to ensure that the subject property was free of latent defects;

(c)    Failing to properly and safely perform construction activities at the subject property thereby increasing the risk of hazards occurring thereto, including water damage;

(d)    Failing to insulate the area of the subject domestic water pipe within its space so as to prevent foreseeably cold temperatures from entering the premises and causing the subject domestic water pipe to freeze and rupture;

(e)    Failing to protect freezing temperatures from compromising the integrity of the subject domestic water pipe located at the premises;

(f)    Failing to perform construction, installation, service and/or maintenance work in accordance with the terms, conditions and provisions of all applicable written and/or oral contracts, agreements, plans and specifications;

(g)    Violating statutes, codes and industry standards during the design, installation, service and/or maintenance of the plumbing system at the subject property including, but not limited to, violations regarding the design, engineering and construction of the plumbing system at the subject property including, but not limited to, failing to install required insulation and/or heating to portions of the subject property that would be exposed to air temperatures at or below freezing;

(h)    Failing to maintain, service and/or repair the plumbing system at the subject property;

(i)    Otherwise failing to use due care under the circumstances.

24.     As a direct and proximate result of the aforesaid negligence, carelessness and/or negligent acts and/or omissions of defendant Marden, the domestic water pipe froze and ruptured, resulting in substantial damages to the Winkelreids' real and personal property.

25.     Pursuant to the terms and conditions of the subject insurance policy, Great Northern did make payments to its insureds for the damages so sustained, the total amount of those payments being Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72).

26.     In accordance with the common law principles of legal and equitable subrogation, Great Northern is subrogated to the rights of its insured with respect to the damages compensable under the policy.

WHEREFORE, plaintiff, Great Northern Insurance Company a/s/o Jon and Abby Winkelreid, demands judgment in its favor and against defendant, W.B. Marden Company, in the amount of Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72) together with interest and costs of this action.

## COUNT III

### PLAINTIFF v. DEFENDANT W.B. MARDEN COMPANY

### BREACH OF WARRANTY

27.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 26 as if the same were fully set forth at length herein.

28.     Defendant Marden agreed to perform its installation services, including but not limited to, the design, installation, inspection and activation of the aforesaid domestic water lines

in a good, safe and workmanlike manner, free from defects and in accordance with all applicable codes and standards.

29.    Defendant Marden breached its expressed and/or implied warranties that its construction work, including, but not limited to, the design, installation, inspection and activation of the aforesaid domestic water lines would be performed in a good, safe and workmanlike manner, free from defects and in accordance with all applicable codes and standards.

30.    As a direct and proximate result of Marden's breach of express and/or implied warranties, plaintiff's insured suffered substantial water damage to their real and personal property for which Great Northern paid its insured.

31.    Pursuant to the terms and conditions of the subject insurance policy, Great Northern did make payments to its insureds for the damages so sustained, the total amount of those payments being Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72).

32.    In accordance with the common law principles of legal and equitable subrogation, Great Northern is subrogated to the rights of its insured with respect to the damages compensable under the policy.

WHEREFORE, plaintiff, Great Northern Insurance Company a/s/o Jon and Abby Winkelreid, demands judgment in its favor and against defendant, W.B. Marden Company, in the amount of Eight Hundred Seven Thousand Five Hundred Ninety Dollars and Seventy-Two Cents ($807,590.72) together with interest and costs of this action.

Respectfully submitted,

BY: _____
Patrick J. Loftus, III, Esquire
9 Park Street
Suite 500
Boston, Massachusetts  02108
(617) 723-7770

Of Counsel:
COZEN AND O'CONNOR
ROBERT M. CAPLAN, ESQUIRE
Attorney for Plaintiff, Great Northern Insurance Company
a/s/o Jon and Abby Winkelreid

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GREAT NORTHERN INSURANCE COMPANY    :
as Subrogee of Jon and Abby Winkelreid    :    CIVIL ACTION NO:
                Plaintiff    :    05cv10165 RGS
      vs.    :
          :
FERGUSON & SHAMAMIAN ARCHITECTS, LLP    :
          :
      and    :
          :
W.B. MARDEN, COMPANY    :
              Defendants    :

### PLAINTIFF'S RULE 14(a) COMPLAINT AGAINST THIRD-PARTY DEFENDANT THIRTY ACRE WOOD, LLC

1.      On January 27, 2005, plaintiff filed a Complaint against defendants, Ferguson & Shamamian Architects, LLP (hereinafter "FSA") and W.B. Marden Company (hereinafter "WBM").

2.      Plaintiff's Complaint alleged *inter alia* that its insured's property was damaged as a result a the negligence of defendant FSA and/or defendant WBM.

3.      On September 1, 2005, defendant FSA filed a Third-Party Complaint against third-party defendant Thirty Acre Wood, LLC (hereinafter "TAW").

4.      In its Third-Party Complaint, defendant/third-party plaintiff FAC alleged, *inter alia,* that the damages resulted from the negligence of third-party defendant TAW and seeks contribution, contractual and common law indemnity from them.

5.      If it is determined that plaintiff's damages were caused by the aforesaid conduct of third-party defendant TAW, so that third-party defendant alone is liable to the plaintiff, or is jointly and severally liable with defendant/third-party plaintiff FAC and/or other parties for

plaintiff's damages, plaintiff hereby makes a direct claim against the third-party defendant

pursuant to Rule 14(a) of the Federal Rules of Civil Procedure.

WHEREFORE, plaintiff demands judgment in its favor and against third-party defendant

Thirty Acre Woods, LLC, in the amount of Eight Hundred Seven Thousand Five Hundred

Ninety Dollars and Seventy-Two Cents ($807,590.72) together with interest and costs of this

action.

Respectfully submitted,

GREAT NORTHERN INSURANCE COMPANY,
By its attorneys,


s/Robert M. Caplan
ROBERT M. CAPLAN, ESQUIRE
DANIEL J. LUCCARO ESQUIRE
Cozen O'Connor
1900 Market Street, 3rd Floor
Philadelphia, PA 19103
215.665.4191

Local Counsel:
Patrick J. Loftus, III, Esquire
9 Park Street, #500
Boston, MA  02108
617.723.7770


Dated:  September 12, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record.

Jay S. Gregory, Esquire
World Trade Center East
Two Seaport Lane
Boston, MA 02210

Kathleen Tulloh Brink, Esquire
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111

I further certify that I sent a copy of the foregoing via regular mail to Thirty Acre Wood, LLC, 43 Nobadeer Farm Road, Nantucket, MA 02554.

s/ Robert Caplan
ROBERT CAPLAN, ESQUIRE



# Abbreviated Form of Agreement Between
# Owner and Architect for Construction Projects
# of Limited Scope

## AIA Document B151 - Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

Copyright 1974, 1978, 1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C., 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

**AGREEMENT**
made as of the  Thirtieth  day of March  in the year of Nineteen Hundred and  Ninety-Nine .

**BETWEEN**  the Owner:
*(Name and address)*

> Mr. and Mrs. Jon Winkelried
> 17 Washington Avenue
> Short Hills, New Jersey  07078

RECEIVED
JUN 1 5 1999

FERGUSON SHAMAMIAN & RATTNER
ARCHITECTS, LLP

and the Architect:
*(Name and address)*

> Ferguson Shamamian & Rattner, Architects LLP
> 270 Lafayette Street
> New York, New York  10012

For the following Project:
*(Include detailed description of Project, location, address and scope.)*

Ferguson Shamamian & Rattner, Architects shall prepare Design and Construction Documents for a new shingle-style residence in Nantucket of approximately 6,000 square feet, a separate Guest House with three bedrooms and a three-bay garage with a Caretaker's apartment. Please refer to the attached Program dated March 19, 1999.

The Owner and Architect agree as set forth below.

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292. Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

## TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT

### ARTICLE 1
### ARCHITECT'S RESPONSIBILITIES

**1.1    ARCHITECT'S SERVICES**

**1.1.1**    The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2**    The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

**1.1.3**    The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

### ARTICLE 2
### SCOPE OF ARCHITECT'S BASIC SERVICES

**2.1    DEFINITION**

**2.1.1.**    The Architect's Basic Services consist of those described under the three phases identified below, any other services identified in Article 12, and include normal structural, mechanical and electrical engineering services.

**2.2    DESIGN PHASE**

**2.2.1**    The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.2**    Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project, and shall submit to the Owner a preliminary estimate of Construction Cost.

**2.3    CONSTRUCTION DOCUMENTS PHASE**

**2.3.1**    Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

**2.3.2**    The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**2.3.3**    Unless provided in Article 12, the Architect, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

**2.4    CONSTRUCTION PHASE --**
**ADMINISTRATION OF THE**
**CONSTRUCTION CONTRACT**

**2.4.1**    The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

**2.4.2**    The Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**2.4.3**    Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent shall not be unreasonably withheld.

**2.4.4**    The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractor is due and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contract for Construction.

**2.4.5**    The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents.    However, the

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292.    Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

Architect shall not be required t  make exhaustive or continuous on-site inspections to chec.. the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. *(More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)*

**2.4.6**    The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction.   The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

**2.4.7**    The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.4.8**    Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect shall review and certify the amounts due the Contractor.

**2.4.9**    The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.4.5 and on the data comprising the Contractor's Application for Payment, that the Work, to the best of the Architect's knowledge, information and belief, has progressed to the point indicated and that quality of the Work is in accordance with the Contract Documents. The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.4.10**    The Architect shall have authority to reject Work which does not conform to the Contract Documents and will have authority to require additional inspection or testing of the Work whenever, in the Architect's reasonable opinion, it is necessary or advisable for the implementation of the intent of the Contract  uments.

**2.4.11**    The Architect shall review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.4.12**    The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if authorized or confirmed in writing by the Owner as provided in Paragraphs 3.1 and 3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

**2.4.13**    The Architect shall conduct inspections to determine the dates of Substantial Completion and final completion and shall issue a final Certificate for Payment.

**2.4.14**    The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

## ARTICLE 3
## ADDITIONAL SERVICES

**3.1**    Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in Article 12, and they shall be paid for by the Owner as provided in this Agreement. Such Additional Services shall include, in addition to those described in Paragraphs 3.2 and 3.3, budget analysis, financial feasibility studies, planning surveys, environmental studies, measured drawings of existing

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292.   Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

independent consultants, evaluation of construction project managers, detailed Construction Cost estimates, quantity surveys, interior design, planning of tenant or rental spaces, inventories of materials or equipment, preparation of record drawings, and any other services not otherwise included in this Agreement under Basic Services or not customarily furnished in accordance with generally accepted architectural practice.

**3.2** If more extensive representation at the site than is described in Subparagraph 2.4.5 is required, such additional project representation shall be provided and paid for as set forth in Articles 11 and 12.

**3.3** As an Additional Service in connection with Change Orders and Construction Change Directives, the Architect shall prepare Drawings, Specifications and other documentation and data, evaluate Contractor's proposals, and provide any other services made necessary by such Change Orders and Construction Change Directives.

## ARTICLE 4
## OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information, including a program which shall set forth the Owner's objectives, schedule, constraints, budget with reasonable contingencies, and criteria.

**4.2** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, a written legal description of the site and the services of geotechnical engineers or other consultants when such services are requested by the Architect.

**4.3** The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.4** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by the Owner.

**4.5** The foregoing services, information, surveys and reports shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

the Architect becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.7** The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be submitted to the Architect for review and approval at least 14 days prior to execution.

## ARTICLE 5
## CONSTRUCTION COST

**5.1** DEFINITION

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractor's overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4.

**5.2** RESPONSIBILITY FOR CONSTRUCTION COST

**5.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

**5.2.2** No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless a fixed limit has been agreed upon in writing and signed by the parties hereto. Fixed limits, if any, shall be increased in the amount of an increase in the Contract Sum occurring after execution of the Contract for Construction.

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292. Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

5.2.3 ~~Any adjustment in the Fixed Limit of Construction Cost may be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.~~

5.2.4 ~~If a fixed limit of Construction Cost is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:~~

    .1  ~~give written approval of an increase in such fixed limit;~~

    .2  ~~authorize rebidding or renegotiating of the Project within a reasonable time;~~

    .3  ~~if the Project is abandoned, terminate in accordance with Paragraph 8.3; or~~

    .4  ~~cooperate in revising the Project scope and quality as required to reduce the Construction Cost.~~

5.2.5 ~~If the Owner chooses to proceed under Clause 5.2.4.4, the Architect, without additional charge, shall modify the Contract Documents as necessary to comply with the fixed limit, if established as a condition of this Agreement. The modification of Contract Documents shall be the limit of the Architect's responsibility arising out of the establishment of a fixed limit. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.~~

## ARTICLE 6
## USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

~~official reproduction of documents for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.~~

## ARTICLE 7
## ARBITRATION

**7.1** ~~Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.~~

**7.2** ~~In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.~~

**7.3** ~~The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

## ARTICLE 8
## TERMINATION, SUSPENSION OR ABANDONMENT

**8.1** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292. Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

**8.3** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving written notice.

**8.4** Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

**8.5** If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

**8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses.

**8.7** Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

**9.1** Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect.

**9.2** Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**9.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

the interruption and resumption of such services, indemnify each other and agents and employees of the other contractors, consultants, agents, and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers from their contractors, consultants and agents.

**9.5** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

**9.6** This Agreement and the attachments hereto represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**9.7** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**9.8** The Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

## ARTICLE 10
## PAYMENTS TO THE ARCHITECT

### 10.1    DIRECT PERSONNEL EXPENSE

**10.1.1** ~~Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.~~

### 10.2    REIMBURSABLE EXPENSES

**10.2.1** Reimbursable Expenses include but are not limited to expenses incurred by the Architect in the interest of

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292. Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

Project for:

.1  expense of transportation and living expenses in connection with out-of-town travel authorized by the Owner;

.2  long-distance communications;

.3  fees paid for securing approval of authorities having jurisdiction over the Project;

.4  reproductions;

.5  postage and handling of Drawings and Specifications;

.6  expense of overtime work requiring higher than regular rates, if authorized by the Owner;

.7  renderings and models requested by the Owner;

.8  expense of additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and Architect's consultants; and

.9  expense of computer-aided design and drafting equipment time when used in connection with the Project.

Insert A: 10. Messengers

### 10.3 PAYMENTS ON ACCOUNT OF BASIC SERVICES

**10.3.1** An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement.

**10.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service.

**10.3.3** If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11.3.2.

**10.3.4** When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project.

### 10.4 PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES

**10.4.1** Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement or services rendered or expenses incurred.

### 10.5 PAYMENTS WITHHELD

**10.5.1** No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

## ARTICLE 11
## BASIS OF COMPENSATION

The Owner shall compensate the Architect as follows:

**11.1** AN INITIAL PAYMENT OF  Ten Thousand  Dollars ($ 10,000 ) has been received and shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

### 11.2 BASIC COMPENSATION

**11.2.1** FOR BASIC SERVICES, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

Fees for Basic Services shall be billed at the following hourly rates and shall not exceed Eighteen Percent (18%) of the final and total Cost of Construction:

Principal's time at the rate of One Hundred Fifty Dollars ($150.00) per hour
Associate's time at the rate of One Hundred and Fifteen Dollars ($115.00) per hour
Senior Architect's time at the rate of One Hundred Dollars ($100.00) per hour

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292.  Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

AIA License Number 101314, which expires on 9/30/1999

Draftsperson's cone at microscope of Construction... payments on Basic Services

**11.2.2** Where compensation is based on a ...ulated sum or percentage of Construction... ...ges of the total Basic Compensation payable:

n each phase shall total the following percent...

*Insert additional phases as appropriate)*

| | |
|---|---|
| Design Phase | percent ( %) |
| Construction Documents Phase: | percent ( %) |
| Construction Phase: | percent ( %) |
| Total Basic Compensation: | one hundred percent (100%) |

## 11.3  COMPENSATION FOR ADDITIONAL SERVICES

**11.3.1  FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES**, as described in Paragraph 3.2, compensation shall be computed as follows:

At the hourly rates listed in section 11.2.1 above.

**11.3.2  FOR ADDITIONAL SERVICES OF THE ARCHITECT** provided under Article 3 or identified in Article 12, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*

At the hourly rates listed in section 11.2.1 above.

Travel time shall be charged at 1/3 the standard hourly rates as listed above.

**11.3.3  FOR ADDITIONAL SERVICES OF CONSULTANTS**, including additional structural, mechanical and electrical engineering services and those provided under Article 3 or identified in Article 12 as part of Additional Services, a multiple of ( ) times the amounts billed to the Architect for such services.
*(Identify specific types of consultants in Article 12, if required.)*

## 11.4  REIMBURSABLE EXPENSES

**11.4.1  FOR REIMBURSABLE EXPENSES**, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of  One and 15/100  ( 1.15 ) times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

## 11.5  ADDITIONAL PROVISIONS

**11.5.1  IF THE BASIC SERVICES** covered by this Agreement have not been completed within  Twenty-four ( 24 ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2**  Payments are due and payable  Fifteen  ( 15 ) days from the date of the Architect's invoice. Amounts unpaid  Thirty ( 30 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*
        Twelve percent (12%) per annum.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

---

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292.   Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  B151-1987

11.5.3  The rates and multiples _____ forth for Additional Services shall be annually _____ justed in accordance with normal salary review practices of the Architect.

## ARTICLE 12
## OTHER CONDITIONS OR SERVICES

*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)*

Please see Article 12 attached

This Agreement entered into as of the day and year first written above.

OWNER

_(Signature)_

Mr. and Mrs. Jon Winkelried
*(Printed name and title)*

ARCHITECT

_(Signature)_

Oscar Shamamian, General Partner
*(Printed name and title)*

AIA DOCUMENT B151 - ABBREVIATED OWNER-ARCHITECT AGREEMENT - THIRD EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C., 20006-5292.   Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1987

AIA Document B 151 / Mr. and Mrs. Jon Winkelried
March 30, 1999
Page 10


ARTICLE 12

12.1    Permits and Inspection Sign-offs
        The Contractor shall be responsible for securing all permits and inspection sign-offs
        as required by the Project. The Owner shall pay all fees for securing approval by
        authorities having jurisdiction over the Project. All permit and filing fees shall be
        paid by the Owner at direct cost.


12.2    Hazardous Materials
        The Architect shall have no responsibility for the discovery, presence, handling,
        removal or disposal of, or exposure of persons to hazardous materials in any form at
        the Project Premises, including, but not limited to, asbestos, asbestos products,
        polychlorinated biphenyl (PCB) or other toxic substances. No services will be
        provided with regard to the detection, removal, disposal, or storage of asbestos.

        In the event that asbestos is discovered at the Project site, the Owner shall retain, at
        the Owner's expense, the services of a certified asbestos consultant (Owner's
        consultant) to survey and identify the existence and location of the asbestos on the
        Project site. The Owner's consultant shall thereafter develop specifications for the
        removal of all asbestos, prepare asbestos removal drawings, and directly oversee
        implementation of said removal. The Owner shall furnish the Architect with a written
        notice which identifies the items to be removed and where such items are located.
        Upon receipt of such notice, the Architect shall commence preparation of the Basic
        Services described in Paragraphs 2.2 and 2.3 of this Agreement, provided, however,
        that no personnel acting for or on behalf of the Architect shall undertake or be
        required to inspect the Project site physically until the Owner shall have provided the
        Architect with certification, acceptable in form and substance to the Architect, signed
        by Owner's consultant stating that all asbestos has been removed from the Project site
        and that the Project site does not contain asbestos fiber concentrations in excess of
        those allowed by local, state and federal laws and regulation in force as of the date of
        such certifications.

        The Owner shall bring no claim against the Architect relating to the presence of
        asbestos or hazardous wastes at the Project site. The Owner shall indemnify, defend
        and hold harmless the Architect from and against any and all claims, causes of action,
        damages, losses, liability, and expenses, including but not limited to attorney's fees
        and insurance deductibles, arising out of the presence of asbestos or hazardous wastes
        at the Project site.

AIA Document B 151 / Mr. and Mrs. Jon Winkelried
March 30, 1999
Page 11

12.3    Indemnification for Use of Drawings
In the event the Owner breaches the provisions of Article 6, the Owner hereby agrees to indemnify, defend, and hold harmless the Architect from any and all claims, causes of action, damages, losses, liability, and expenses, including but not limited to attorneys' fees and insurance deductibles.

12.4    No Duty to Third Parties
The Architect assumes no duty or responsibility hereunder which may be construed as being for the benefit of, and thereby enforceable by, the Contractor, Subcontractor or any Sub-subcontractor, or any of their bonding companies, it being understood that the Architect's obligations are solely to the Owner.

12.5    Mediation
In the event of a claim, dispute or other matter in question between the parties arising out of or relating to this Agreement or breach thereof, the parties shall, in the first instance, endeavor to settle disputes by mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Demand for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for mediation shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for mediation be made after the date when institution of legal or equitable proceeding based on such claim dispute or other matter in question would be barred by the applicable Statue of Limitations.

12.6    Limitation of Liability
Neither the Architect, nor their agents or employees shall be jointly, severally or individually liable to the Owner in an amount in excess of the compensation to be paid pursuant to this agreement or in the amount of One Million Dollars  ($1,000,000), whichever is greater, by reason of any act or omission, including breach of contract or negligence not amounting to a willful or intentional wrong.

12.7    Governing Law
This Agreement shall be governed by the laws of New York State.

12.8    Attorney's Fees
In the event any action or suit is brought by either party against the other by reason of any breach of this Agreement, or in any other way relating to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all costs and expenses of such action or suit, including attorneys' fees.

AIA Document B 151 / Mr. and Mrs. Jon Winkelried
March 30, 1999
Page 12

12.9    Statute of Limitations
Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

Any action brought by either party against the other which relates in any way to this Agreement, shall be barred after one year has passed from the time the aggrieved party knew or should have known of its claim.

12.10    Entire Agreement
This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This agreement may be amended only by written instrument signed by both Owner and Architect.

12.11    Professional Credit and Publicity
The Architect shall have the right to include representations of the design of the Project, including photographs of the exterior and interior, among the Architect's promotional and professional materials. The Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect on the construction sign and in the promotional materials for the Project. The Architect agrees that no photographic or other representations of the Project shall be published in any magazine without the prior written consent of the Owner. The Architect shall have the right to photograph the Project at its expense at a mutually convenient time.

12.12    No Liability
Neither the Architect's authority to act under Subparagraph 2.4.10, nor any decision made by the Architect in good faith either to exercise or not to exercise such authority, shall give rise to any liability on the part of the Architect to the Owner, the Contractor, any Subcontractor or supplier, any of their agents or employees, or any other person.

12.13    Notice of Claims
Each party hereto must notify the other, in writing, of the substance of any claim against the other within 30 days after such claim has arisen. In the event such notice of claim is not given, such claim shall be deemed waived by the owner of such claim.

AIA Document B 151 / Mr. and Mrs. Jon Winkelried
March 30, 1999
Page 13

12.14    Certifications
All certifications requested of the Architect shall be based entirely on and consistent with the Architect's construction phase observations of the progress of the work. The Architect shall not be requested to certify that all of the Work of the Project has been done in conformity with the Contract Documents.

12.15    Other Additional Services
In addition to the Additional Services itemized in Article 3.1, other Additional Services include, but are not limited to:

    a)    Making revisions in Drawings, Specifications or other documents when such revisions are inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustment in the Owner's Program or Construction Budget;

    b)    Providing services made necessary by the default of the Contractor, by defects or deficiencies in the performance of either the Owner or the Contractor under the Contract for Construction;

    a)    Preparing documents for alternate, separate or sequential bids;

    b)    Providing services required or in connection with the selection, procurement or installation of furnishings, cabinets, fixtures, appliances or equipment not specified by the Architect but provided by the Owner;

12.16    General Provisions
    a)    The Architect shall assist the Owner in the selection of Consultants as required by the Project. All Consultants are to be hired directly by the Owner as needed and shall be directed by the Architect.

    b)    For purposes of determining the Architect's fee, the construction cost shall include all site preparation, general construction, cabinets, appliances, equipment(including audio/video, motorized shades, telephone, lighting and security systems) plumbing fixtures and fittings, finishes (excluding interior paint, wallpaper and upholstery, but including all surface materials and stain finishes on floors and architectural woodwork) and furnishings and equipment specified by the Architect and/or Consultants or Vendors working under the Architect's direction.

AIA Document B 151 / Mr. and Mrs. Jon Winkelried
March 30, 1999
Page 14

c)   Interior decoration shall be defined as project elements not designed, specified or installed under the Architect's direction. These elements typically include carpet, interior paint, wallpaper, manual window shades, curtains, decorative light fixtures and furnishings provided and installed by subcontractors hired and supervised by the Owner or the Owner's Decorator.

For the selection of finish elements typically included in the Architect's Construction Documents i.e. marble, ceramic tile, wood finishes, plumbing fixtures, etc. selected by the Decorator, it is recognized that these items must be integrated with the Architect's work and shall be computed as part of the Construction Cost.

Any amendment to the scope of project elements not included in the Architect's Basic Services shall be determined in consultation with the Owner's Decorator and be provided as written amendment to this agreement.

d)   The Owner and/or Contractor shall provide the Architect with shop drawings, product data and/or specifications for furnishings or equipment not specified by the Architect, but provided by the Owner for this Project, so that the Architect may coordinate it with the work of this Project (if applicable).

9823.rid

FERGUSON SHAMAMIAN & RATTNER

ARCHITECTS, LLP

270 LAFAYETTE STREET, NEW YORK, NEW YORK 10012

TELEPHONE: 212-941-8088

TELEFAX: 212-941-8089

**Winkelried Residence**

**Nantucket, Massachusetts**

**Project No. 9820**

Program

March 19, 1999

I.   Main House - First Floor
  A.   Entry
    1.   Would like to be able to see through to backyard.(ocean view)
  B.   Living Room
    1.   The Owner would like one large room to be used by guests and family.
    2.   Would like a fireplace.
      a.   All fireplaces should be shallow in depth with large openings if possible.
  C.   Dining Room
    1.   Would like enough space for 14 people.
    2.   Should be adjacent to Kitchen.
    3.   One large table with the option of three small round tables.
    4.   Would like fireplace.
    5.   Adjacent to Family Room.
  D.   Kitchen
    1.   Appliances:
      a.   Two sinks
      b.   Two dishwashers
      c.   Two refrigerators
      d.   One freezer
    2.   Should be adjacent to Screened Porch.
    3.   Allow for sitting and eating for 14 people.
    4.   Would like a fireplace if possible.
    5.   Good view of Ocean.
  E.   Screened Porch
    1.   Needs to have access to Kitchen.
  F.   Family Room
    1.   Would like extra space for children to watch TV and relax.
  G.   Laundry
    1.   Should be near Kitchen.
    2.   Two dryers.  (One large commercial unit for towels.)
    3.   Not required on Second Floor

FERGUSON SHAMAMIAN & RATTNER
ARCHITECTS, LLP

Winkelried Residence
March 19, 1999
Page 2

 H. Guest Room
   1. Should have a full Bathroom.
 I. Back Stair-if required
   1. Near Mudroom.

II. Main House - Second Floor
 A. Master Bedroom Suite
   1. Separate Bathrooms and Dressing Rooms.
     a. Her Bath
      (1) shower
      (2) bathtub
      (3) no bidets in any Bathrooms
     b. His Bath
      (1) shower
      (2) no bathtub
     c. Her Dressing Room
      (1) spacious
     d. His Dressing Room
      (1) minimal
   2. Would like fireplace.
 B. Boy's Bedroom
   1. Private Bathroom.
     a. Shower, no bathtub.
 C. (2) Girls' Bedrooms
   1. Shared Bathroom.
     a. Separate bathing area from sink and toilet area.
     b. Shower and bathtub.
     c. Access to Bathroom should be from Bedrooms.
 D. Allow for Storage, Linen closets and a cedar closet.

III. Basement
 A. Wine Cellar (size TBD)
 B. Game Room
   1. Pool table.
   2. Ping-Pong table.
   3. Video games.
 C. Powder Room.
 D. Media Room for small projection screen theater system.

FERGUSON SHAMAMIAN & RATTNER
ARCHITECTS, LLP

Winkelried Residence
March 19, 1999
Page 3

IV.     Exterior
    A.     Outdoor Shower - Exterior Powder Room
        1.     Near Pool and beach entry.
    B.     Exterior Storage
        1.     Lawn chairs.
        2.     Other beach equipment.
    C.     Would like to have simple massing.

V.      Pool
    A.     45' minimum preferably 50' long.
    B.     18' minimum, preferably 20' wide.
    C.     No diving board.
    D.     Shallow - should be 3½ feet with deep end.
    E.     Color to be determined.
    F.     Limestone coping with bluestone sides.
    G.     Pool Room connection to Playroom of Main House.

VI.     Guest House
    A.     Three Bedrooms.
    B.     Kitchenette.

VII.    Garage
    A.     Three bays for cars.
    B.     Added Tackle Room for fishing gear.
    C.     Possible Dark Room with no exterior access. (?)
    D.     Caretaker apartment upstairs.
        1.     Sitting Room with Kitchenette and eating table.
        2.     Bedroom and full Bathroom.
    E.     Auto bays to maintain approximately 50° F and large enough for a Suburban with reasonable spacing (length to be determined).
    F.     Caretaker's Entry.

VIII.   Site
    A.     Driveway
        1.     Maintain two entries, but try to separate connection.
    B.     Open area for playing catch and other yard games.

9920program.wpd

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
LAS VEGAS
LONDON
LOS ANGELES

**COZEN O'CONNOR**
ATTORNEYS

Project #: 9820
Copy to: DS, JS, RW, JSM
Master File Code:

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

March 1, 2004

Robert M. Caplan
Direct Phone 215.665.4191
Direct Fax  215.701.2491
rcaplan@cozen.com

**VIA FEDERAL EXPRESS**
Mr. Rick Williams
Ferguson & Shamamian Architects, LLP
270 Lafayette Street
New York, New York 10012

**NOTICE OF POTENTIAL CLAIM;**
**NOTICE OF OPPORTUNITY TO**
**PARTICIPATE IN SITE INSPECTION**

Re:   Insureds:         Jon Winkelreid
      Date of Loss:     1/18/04
      Policy No.:       001157476608
      Loss Location:    15 Cathcart Road
                        Nantucket, MA  02554
      Our File No.:     147881

Dear Mr. Williams:

Please be advised, the undersigned represents the interests of the Federal Insurance Company and Jon Winkelreid in connection with water losses which occurred on January 18, 2004 at the Winkelreid residence located at 15 Cathcart Road, Nantucket, Massachusetts.

Preliminary investigations at the loss site indicate interior water pipes and/or connections may have frozen as a result of violations of the Massachusetts and International Plumbing Code regarding installation of piping in locations prone to freezing. You have been identified as the architect of the premises and your design may have cause or contributed to the loss. Accordingly, please consider this letter as formal notice by Federal and Mr. Winkelreid of their potential claims against your company for losses sustained on January 18, 2004. I strongly encourage you to immediately place your liability insurance carrier on notice of this claim.

Please be further advised that you are invited to participate in an inspection of the loss site and the subject equipment at a mutually convenient date and time. The area of origin has been secured for inspection purposes, however, plumbing and related damaged equipment must soon be removed so that new equipment can be installed as the rebuilding of the house continues. The affected areas have been photographed in their damaged condition and the evidence has been secured and will be preserved for future evaluation. Please contact me at your earliest

RECEIVED

MAR 0 2 2004

FERGUSON & SHAMAMIAN

March 1, 2004
Page 2

business days after receipt of this letter so that we may agree on a mutually agreeable inspection date and time

Thank you in advance for your prompt attention to this important matter and should you have any questions, please do not hesitate to contact me directly.

Very truly yours,

COZEN O'CONNOR

BY:    Robert M. Caplan

RMC/jk

· cc:    Mr. James Rogers
        Mr. John Winkelreid

PHILA1\2023407\1 147881.000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE COMPANY<br>As Subrogree of Jon and Abby Winkelreid<br>200 S. 6th Street<br>Suite 1000<br>Minneapolis, Minnesota 55402-1470 | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiff | )<br>) | CIVIL ACTION<br>NO. 05-CV-10165-RGS |
| v. | )<br>) | |
| FERGUSON & SHAMAMIAN ARCHITECTS, LLP<br>270 Lafayette Street<br>Suite 300<br>New York, New York 10012 | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| W.B. MARDEN COMPANY<br>2 Milk Street<br>Nantucket, Massachusetts 02554 | )<br>)<br>)<br>) | |
| Defendants | )<br>) | |

## MEMORANDUM OF LAW OF THE DEFENDANT/THIRD-PARTY PLAINTIFF FERGUSON & SHAMAMIAN ARCHITECTS, LLP IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND FOR THE ENTRY OF SEPARATE AND FINAL JUDGMENT

The defendant/third-party plaintiff, Ferguson & Shamamian Architects, LLP ("Ferguson & Shamamian"), respectfully submits this memorandum of law in support of its motion for summary judgment as to the Complaint filed by the plaintiff, Great Northern Insurance Company (the "plaintiff"), and for the entry of separate and final judgment.

## INTRODUCTION

This matter arises from the design and construction of a new residence for Jon and Abby Winkelreid, located at 15 Cathcart Road, Nantucket, Massachusetts (the "Project"). The plaintiff claims that an interior water pipe froze, burst and caused water damage to its insureds, the Winkelreids, as a result of the defendants' negligence. The plaintiff filed this action against Ferguson & Shamamian and Thirty Acre Wood LLC ("Thirty Acre") for negligence and W.B. Marden Company ("W.B. Marden") for negligence and breach of warranty.

The plaintiff's negligence claim against Ferguson & Shamamian has been waived by the Winkelreids. According to the contract between the Winkelreids and Ferguson & Shamamian, the Winkelreids were required to give written notice of any claim against Ferguson & Shamamian within 30 days after such claim arose or the claim would be deemed waived. The Winkelreids failed to give timely notice of the claims alleged in the Complaint. Accordingly, Ferguson & Shamamian is entitled to summary judgment because no genuine issues of material fact exist as to the plaintiff's claim against Ferguson & Shamamian, and Ferguson & Shamamian is entitled to judgment as a matter of law. For the reasons discussed in detail below, the plaintiff's claims against Ferguson & Shamamian should be dismissed and the Court should enter separate and final judgment in Ferguson & Shamamian's favor.

## UNDISPUTED FACTUAL BACKGROUND

Ferguson & Shamamian incorporates herein the facts set forth in its Statement of Undisputed Material Facts filed contemporaneously herewith.

In summary, Ferguson & Shamamian entered into a contract with the Winkelreids on March 30, 1999 (the "Contract") (attached to Ferguson & Shamamian's Motion as Exhibit C), pursuant to which Ferguson & Shamamian agreed to prepare certain design and construction

documents in connection with the Project.  (Undisputed Material Fact ("UMF"), ¶ 2.)  Section

12.13 of the Contract, entitled "Notice of Claims," states:

> "Each party hereto must notify the other, in writing, of the substance of
> any claim against the other within 30 days after such claim has arisen.  In the
> event such notice of claim is not given, such claim shall be deemed waived by the
> owner of such claim."

(UMF, ¶ 3.)

On or about January 19, 2004, a water pipe at the Project froze and burst, causing water

damage in the Winkelreid residence.  (UMF, ¶ 4.)

The plaintiff is the insurer of the Winkelreids' property and made payments to the

Winkelreids pursuant to the terms and conditions of the Winkelreids' insurance policy, for their

damages from the pipe burst.  (UMF, ¶¶ 5 & 6.)  The plaintiff then initiated this subrogation

action in an attempt to recover the amount it paid the Winkelreids for the loss.  (UMF, ¶¶ 7.)

More than 30 days after the incident, on March 1, 2004, the plaintiff's counsel sent

Ferguson & Shamamian written notice of a potential claim regarding the water damage (attached

to Ferguson & Shamamian's Motion as Exhibit D, UMF, ¶ 8).

On January 27, 2005, the plaintiff filed the Complaint, alleging negligence against

Ferguson & Shamamian and negligence and breach of warranty against W.B. Marden (attached

to Ferguson & Shamamian's Motion as Exhibit A, UMF, ¶ 9).  On September 12, 2005, the

plaintiff filed a Rule 14(a) Complaint against Thirty Acre for negligence (attached to Ferguson &

Shamamian's Motion as Exhibit B, UMF, ¶ 10).

## ARGUMENT

## A.    FERGUSON & SHAMAMIAN IS ENTITLED TO SUMMARY JUDGMENT

"Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law."  <u>Geo. Knight Co., Inc. v.

Watson Wyatt & Co.</u>, 170 F.3rd 210, 213 (1st Cir. 1999) (affirming grant of summary judgment

in favor of consulting firm on charges of professional negligence).  The moving party discharges its initial burdened by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id.</u> at 322.  Summary judgment is appropriate against the non-moving party who fails to make this requisite showing.  <u>Dias v. Vose</u>, 865 F. Supp. 53, 56 (D.Mass. 1994), <u>aff'd mem.</u>, 50 F.3rd 1 (1st Cir. 1995).

The construction of provisions in a written contract is an appropriate matter for the court to consider at summary judgment and may be decided as a matter of law.  <u>See</u> <u>Urban Investment & Dev. Co. v. Turner Constr. Co.</u>, 35 Mass. App. Ct. 100, 107 n.6 (1993); <u>see also</u> <u>Allstate Ins. Co. v. Bearce</u>, 412 Mass. 442, 446-47 (1992) (citing <u>Cody v. Connecticut Gen. Life Ins. Co.</u>, 387 Mass. 142, 146 (1982)).  Where the language of a contract is unambiguous, the construction of the contract provisions is a question of law only, and the court must enforce the contract in accordance with the plain meaning of its terms.  <u>See</u> <u>Freelander v. G. & K. Realty Corp.</u>, 357 Mass. 512, 515-16 (1970).

In the present case, the Contract clearly requires judgment in favor of Ferguson & Shamamian.  Accordingly, this Court should dismiss the plaintiff's claim of negligence against Ferguson & Shamamian.

**B.    FERGUSON & SHAMAMIAN MAY ASSERT THE SAME DEFENSE AGAINST THE PLAINTIFF THAT IT WOULD ASSERT AGAINST THE WINKELREIDS.**

Ferguson & Shamamian has the same defenses against the plaintiff, as subrogee of the Winkelreids, as it would if the Winkelreids directly brought the complaint.  As a result, because a claim brought against Ferguson & Shamamian by the Winkelreids to recover for water damage

would be waived due to the terms of the Contract, the claim brought by the plaintiff against Ferguson & Shamamian is also waived.

"Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Provident Co-operative Bank v. James Talcot, Inc., 358 Mass. 180, 188 (1970) quoting Jackson Co. v. Boylston Mut. Ins. Co., 139 Mass. 508, 510 (1885). Subrogation places the insurer in the shoes of the subrogee and entitles the insurer to pursue any remedies that the subrogee might have had. Frost v. Porter Leasing Corp., 386 Mass. 425, 427 (1982). "[T]he insurer's rights by subrogation are no greater than the rights of the insured." Liberty Mut. Ins. Co. v. National Consol. Warehouse, Inc., 34 Mass. App. Ct. 293, 297 (1993). "In as much as plaintiff sues as subrogee . . . the plaintiff has only the rights which [subrogor] would have if it were suing [the defendant] and is subject to any defenses which [the defendant] could assert against [the subrogor]." Federal Insurance Co. v. First Nat'l Bank, 633 F.2d 978, 981 n.3 (1st Cir. 1980) citing Provident Co-operative Bank v. James Talcot, Inc., 358 Mass. 180, 188 (1970).

Here, the plaintiff is suing Ferguson & Shamamian as subrogee of the Winkelreids. Therefore, the plaintiff has only those rights which the Winkelreids would have if they were suing Ferguson & Shamamian directly. The plaintiff admits that it is subrogated to the rights of the Winkelreids with respect to the alleged damages. UMF, ¶ 7. The plaintiff therefore is subject to any and all defenses which Ferguson & Shamamian could assert against the Winkelreids.

**C.    FERGUSON & SHAMAMIAN IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM FOR NEGLIGENCE BECAUSE THE WINKELREIDS WAIVED THEIR RIGHT TO RECOVER FROM FERGUSON & SHAMAMIAN.**

Ferguson & Shamamian is entitled to summary judgment on the plaintiff's claim for

5

negligence because the Winkelreids waived their right to recover from Ferguson & Shamamian by the terms of the Contract. The United States Supreme Court has stated that "[t]he threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties." Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851; 860-861, 107 S. Ct. 2161; 95 L. Ed. 2d 791 (1987).

In this case, section 12.13 of the Contract, entitled "Notice of Claims," states that the Winkelreids must notify Ferguson & Shamamian in writing of the substance of any claim against Ferguson & Shamamian within 30 days after such claim has arisen and that if such notice is not given then it is deemed waived by the Winkelreids (UMF, ¶ 3). The Complaint alleges that the water damage in the Winkelreid residence occurred on or about January 19, 2004 (UMF, ¶ 4). The Winkelreids were aware of the water damage on the date of the damage. (Affidavit of Oscar Shamamian at ¶ 4). The first written notice by the Winkelreids, through the plaintiff's counsel, to Ferguson & Shamamian of the water damage was on March 1, 2004 (UMF, ¶ 8, Affidavit of Oscar Shamamian at ¶¶ 4 & 5). The notice was provided over 30 days after the claim arose and therefore any claim by the Winkelreids against Ferguson & Shamamian for the water damage is waived. (Affidavit of Oscar Shamamian at ¶ 6). In addition, as subrogee, the plaintiff's claim of negligence against Ferguson & Shamamian has also been waived. Accordingly, Ferguson & Shamamian is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Ferguson & Shamamian respectfully requests that this Court grant its Motion for Summary Judgment. Ferguson & Shamamian also respectfully requests that, as there is no just cause for delay, this Court direct the clerk to enter separate and final judgment

in Ferguson & Shamamian's favor.

Respectfully submitted,
FERGUSON & SHAMAMIAN
ARCHITECTS, LLP,
By its attorneys,

David J. Hatem, PC, BBO #225700
Jay S. Gregory, BBO #546708
Deborah F. Schwartz, BBO #658278
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
Tel: (617)406-4500

Dated: October 2*, 2005

## CERTIFICATE OF SERVICE

I, Deborah F. Schwartz, Esquire, hereby certify that on this 25th day of October, 2005, I served the attached *Memorandum of Law of the Defendant/Third-Party Plaintiff Ferguson & Shamamian Architects, LLP in Support of its Motion for Summary Judgment and for the Entry of Separate and Final Judgment* by mailing a copy thereof, postage pre-paid to:

Patrick J. Loftus, III, Esquire
Law Office of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA 02108
Counsel for Plaintiff

Robert M. Caplan, Esquire
Cozen and O'Connor
1900 Market Street
Philadelphia, PA 19103

Francis J. Lynch, Esquire
John F. Gleavy, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thirty Acre Wood LLC
7 Thirty Acres Lane
Nantucket, MA 02554

Martin S. Cosgrove
Cosgrove, Eisenberg and Kiley, P.C.
803 Hancock Street
P.O. Box 189
Qincy, MA 02170

Deborah F. Schwartz, Esquire

00945843

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY ) <br> As Subrogee of Jon and Abby Winkelreid ) <br> 200 S. 6th Street ) <br> Suite 1000 ) <br> Minneapolis, Minnesota 55402-1470 ) <br> ) <br>      Plaintiff ) <br> ) <br> v. ) <br> ) <br> FERGUSON & SHAMAMIAN ARCHITECTS, LLP ) <br> 270 Lafayette Street ) <br> Suite 300 ) <br> New York, New York 10012 ) <br> ) <br> and ) <br> ) <br> W.B. MARDEN COMPANY ) <br> 2 Milk Street ) <br> Nantucket, Massachusetts 02554 ) <br> ) <br>      Defendants ) <br> ) | CIVIL ACTION <br> NO. 05-CV-10165-RGS |

## STATEMENT OF UNDISPUTED MATERIAL FACTS OF THE DEFENDANT/THIRD-PARTY PLAINTIFF FERGUSON & SHAMAMIAN ARCHITECTS, LLP IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND FOR THE ENTRY OF SEPARATE AND FINAL JUDGMENT

Pursuant to Local Rule 56.1, the defendant, and third-party plaintiff, Ferguson & Shamamian Architects, LLP ("Ferguson & Shamamian"), respectfully submits this statement of undisputed facts in support of its motion for summary judgment.

1.     Jon and Abby Winkelreid own the property located at 15 Cathcart Road, Nantucket, Massachusetts (the "Property"). Complaint at ¶ 2(attached as Exhibit Exhibit A to Ferguson & Shamamian's Motion for Summary Judgment).

2.    Ferguson & Shamamian entered into a contract with the Winkelreids on March 30, 1999 (the "Contract"), pursuant to which Ferguson & Shamamian agreed to prepare certain design and construction documents in connection with the Project.  Contract at p. 2 (attached as Exhibit C to Ferguson & Shamamian's Motion for Summary Judgment); Complaint at ¶ 10; Affidavit of Oscar Shamamian at ¶ 2.

3.    Section 12.13 of the Contract, entitled "Notice of Claims," states:

> "Each party hereto must notify the other, in writing, of the substance of any claim against the other within 30 days after such claim has arisen.  In the event such notice of claim is not given, such claim shall be deemed waived by the owner of such claim."

Contract at sec. 12.13; Affidavit of Oscar Shamamian at ¶ 3.

4.    On or about January 19, 2004, a water pipe at the Project froze and burst, causing water damage in the Winkelreid residence.  Complaint at ¶¶ 12 & 14.

5.    The plaintiff, Great Northern Insurance Company, is the insurer of the Winkelreids.  Complaint at ¶ 2.

6.    Pursuant to the terms and conditions of the Winkelreids' insurance policy, the plaintiff made payments to the Winkelreids for their damages from the burst pipe.  Complaint at ¶ 15.

7.    The plaintiff is subrogated to the rights of the Winkelreids with respect to the damages compensable under the Winkelreids' insurance policy.  Complaint at ¶ 16.

8.    On March 1, 2004, the plaintiff's counsel sent Ferguson & Shamamian written notice of a potential claim regarding the water loss.  Letter, dated March 1, 2004 (attached as Exhibit D to Ferguson & Shamamian's Motion for Summary Judgment); Affidavit of Oscar Shamamian at ¶ 4.

9.    On January 27, 2005, the plaintiff filed the Complaint against Ferguson &
Shamamian and W.B. Marden, alleging negligence against Ferguson & Shamamian and
negligence and breach of warranty against W.B. Marden.  Complaint.

10.    On September 12, 2005, the plaintiff filed a Rule 14(a) Complaint against Thirty
Acre for negligence.  Rule 14(a) Complaint (attached as Exhibit B to Ferguson & Shamamian's
Motion for Summary Judgment).

Respectfully submitted,
FERGUSON & SHAMAMIAN
ARCHITECTS, LLP,
By its attorneys,

David J. Hatem, PC, BBO #225700
Jay S. Gregory, BBO #546708
Deborah F. Schwartz, BBO #658278
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
Tel:  (617)406-4500

Dated:  October 28, 2005

## CERTIFICATE OF SERVICE

I, Deborah F. Schwartz, Esquire, hereby certify that on this 26th day of October, 2005, I served the attached *Statement of Undisputed Material Facts of the Defendant/Third-Party Plaintiff Ferguson & Shamamian Architects, LLP in support of its Motion for Summary Judgment and for the Entry of Separate and Final Judgment* by mailing a copy thereof, postage pre-paid to:

Patrick J. Loftus, III, Esquire
Law Office of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA 02108
Counsel for Plaintiff

Robert M. Caplan, Esquire
Cozen and O'Connor
1900 Market Street
Philadelphia, PA 19103

Francis J. Lynch, Esquire
John F. Gleavy, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thirty Acre Wood LLC
7 Thirty Acres Lane
Nantucket, MA 02554

Martin S. Cosgrove
Cosgrove, Eisenberg and Kiley, P.C.
803 Hancock Street
P.O. Box 189
Qincy, MA 02170

00946398

Deborah F. Schwartz, Esquire

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GREAT NORTHERN INSURANCE COMPANY )
As Subrogree of Jon and Abby Winkelried )
200 S. 6th Street )
Suite 1000 )
Minneapolis, Minnesota 55402-1470 )
                                                                    )    CIVIL ACTION
     Plaintiff )    NO. 05-CV-10165-RGS
                                                                    )
v. )
                                                                    )
FERGUSON & SHAMAMIAN ARCHITECTS, LLP )
270 Lafayette Street )
Suite 300 )
New York, New York 10012 )
                                                                    )
and )
                                                                    )
W.B. MARDEN COMPANY )
2 Milk Street )
Nantucket, Massachusetts 02554 )
                                                                    )
     Defendants )
                                                                    )

## AFFIDAVIT OF OSCAR SHAMAMIAN

I, Oscar Shamamian, under oath do hereby swear and depose as follows:

1.    I am a registered architect and a partner at Ferguson & Shamamian Architects,

LLP ("Ferguson & Shamamian"), located at 270 Lafayette Street, New York, NY.  I state all

matters in this affidavit upon personal knowledge.

2.    Ferguson & Shamamian entered into a contract, dated March 30, 1999 (the

"Contract"), to prepare certain design and construction documents in connection with a new

residence for Jon and Abby Winkelried, located at 15 Cathcart Road, Nantucket, Massachusetts

(the "Project").  A true and accurate copy of the Contract is attached to Ferguson &

Shamamian's motion for summary judgment.

     3.      Section 12.13 of the Contract, entitled "Notice of Claims," states:

> "Each party hereto must notify the other, in writing, of the substance of any claim against the other within 30 days after such claim has arisen.  In the event such notice of claim is not given, such claim shall be deemed waived by the owner of such claim."

     4.      On March 1, 2004, the plaintiff's counsel sent Ferguson & Shamamian written

notice of a potential claim regarding water damage from an alleged pipe burst at the Project on or

about January 19, 2004.  This letter is the first written notice that the Winkelrieds or their

counsel sent to Ferguson & Shamamian even though the Winkelrieds were aware of the water

damage on or about January 19, 2004.

     5.      Ferguson & Shamamian did not receive written notice of the potential claim from

the plaintiff or the Winkelrieds prior to the letter dated March 1, 2004.

     6.      Ferguson & Shamamian did not receive written notice of the potential claim from

the plaintiff or the Winkelrieds within 30 days of the claim arising.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14th DAY OF OCTOBER, 2005.

_____
Oscar Shamamian

## CERTIFICATE OF SERVICE

I, Deborah F. Schwartz, Esquire, hereby certify that on this 28th day of October, 2005, I served the attached *Affidavit of Oscar Shamamian* by mailing a copy thereof, postage pre-paid to:

Patrick J. Loftus, III, Esquire
Law Office of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA 02108
Counsel for Plaintiff

Robert M. Caplan, Esquire
Cozen and O'Connor
1900 Market Street
Philadelphia, PA 19103

Francis J. Lynch, Esquire
John F. Gleavy, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thirty Acre Wood LLC
7 Thirty Acres Lane
Nantucket, MA 02554

Martin S. Cosgrove
Cosgrove, Eisenberg and Kiley, P.C.
803 Hancock Street
P.O. Box 189
Qincy, MA 02170

Deborah F. Schwartz, Esquire

00947285

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GREAT NORTHERN INSURANCE COMPANY )
As Subrogree of Jon and Abby Winkelreid )
200 S. 6th Street )
Suite 1000 )
Minneapolis, Minnesota 55402-1470 )
)                          CIVIL ACTION
    Plaintiff )                     NO. 05-CV-10165-RGS
)
v. )
)
FERGUSON & SHAMAMIAN ARCHITECTS, LLP )
270 Lafayette Street )
Suite 300 )
New York, New York 10012 )
)
and )
)
W.B. MARDEN COMPANY )
2 Milk Street )
Nantucket, Massachusetts 02554 )
)
    Defendants )
)

## AFFIDAVIT OF JAY S. GREGORY

I, Jay S. Gregory, under oath do hereby swear and depose as follows:

1.      I am a member in good standing of the bar in the Commonwealth of

Massachusetts and the United States District Court for the District of Massachusetts.

2.      I am a partner in the law firm of Donovan Hatem LLP, Two Seaport Lane,

Boston, Massachusetts 02210, which represents the defendant/third-party plaintiff, Ferguson &

Shamamian Architects, LLP ("Ferguson & Shamamian") in this action.

3.      I submit this Affidavit in support of Ferguson & Shamamian's Motion for

Summary Judgment and for the Entry of Separate and Final Judgment in this action.

4.      The exhibits referenced in the Memorandum of Law of Ferguson & Shamamian Architects, LLP in Support of its Motion for Summary Judgment and for the Entry of Separate and Final Judgment, and attached to Ferguson & Shamamian's Motion for Summary Judgment and for the Entry of Separate and Final Judgment, are true and accurate copies of the original documents produced in this matter.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS $2\mathcal{Y}$ DAY OF OCTOBER, 2005.

_____
Jay S. Gregory

## CERTIFICATE OF SERVICE

I, Deborah F. Schwartz, Esquire, hereby certify that on this 28th day of October, 2005, I served the attached *Affidavit of Jay S. Gregory* by mailing a copy thereof, postage pre-paid to:

Patrick J. Loftus, III, Esquire
Law Office of Patrick J. Loftus, III
9 Park Street, Suite 500
Boston, MA 02108
Counsel for Plaintiff

Robert M. Caplan, Esquire
Cozen and O'Connor
1900 Market Street
Philadelphia, PA 19103

Francis J. Lynch, Esquire
John F. Gleavy, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thirty Acre Wood LLC
7 Thirty Acres Lane
Nantucket, MA 02554

Martin S. Cosgrove
Cosgrove, Eisenberg and Kiley, P.C.
803 Hancock Street
P.O. Box 189
Qincy, MA 02170

_____
Deborah F. Schwartz, Esquire

00946398

2