## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE COMPANY | : | |
| as Subrogee of Jon and Abby Winkelried | : | CIVIL ACTION NO: |
| Plaintiff | : | 05cv10165 RGS |
| vs. | : | |
| | : | |
| FERGUSON & SHAMAMIAN ARCHITECTS, LLP, et al.: | | |
| Defendants | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT FERGUSON & SHAMAMIAN ARCHITECTS, LLP'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Great Northern Insurance Company, as subrogee of Jon and Abby Winkelreid, through its undersigned counsel, hereby answers and opposes defendant Ferguson & Shamamian Architects, LLP's Motion for Summary Judgment, and, on the basis of the facts and authorities set forth in the accompanying Memorandum of Law, plaintiff respectfully requests this Honorable Court to deny defendant's Motion.

                                       Respectfully submitted,

                                       COZEN O'CONNOR


                                       s/ Robert M. Caplan
                                       ROBERT M. CAPLAN, ESQUIRE
                                       DANIEL J. LUCCARO ESQUIRE
                                       1900 Market Street, 3rd Floor
                                       Philadelphia, PA 19103
                                       215.665.4191

Local Counsel:
Patrick J. Loftus, III, Esquire
9 Park Street, #500
Boston, MA  02108
617.723.7770

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE COMPANY | : | |
| as Subrogee of Jon and Abby Winkelried | : | CIVIL ACTION NO: |
| Plaintiff | : | 05cv10165 RGS |
| vs. | : | |
| | : | |
| FERGUSON & SHAMAMIAN ARCHITECTS, LLP, et al.: | | |
| Defendants | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT FERGUSON & SHAMAMIAN ARCHITECTS, LLP'S MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

This is a subrogation action arising of a pipe burst at a vacation property owned by Jon and Abby Winkelried ("the Winkelrieds"), located at 15 Cathcart Road, Nantucket, Massachusetts ("the Property").  On January 19, 2004, a copper water pipe ("the Pipe"), which fed the humidifier for an air handling unit in the attic of the Property, froze and burst, allowing massive amounts of water to discharge throughout the Property causing significant damage ("the Incident").  The Pipe was located in an unheated void space adjacent to a chimney chase way.  It was subsequently determined by plaintiff's retained mechanical engineer that the pipe installation violated the Massachusetts and International Plumbing Codes.

Defendant Ferguson & Shamamian Architects, LLP ("FSA") designed the Property.  Third-party defendant Thirty Acre Wood, LLC ("Thirty Acre") built the Property.  Defendant W.B. Marden Company ("Marden") was subcontracted by Thirty Acre to do some of the plumbing work and installed the Pipe.  Plaintiff filed a Complaint against defendants Marden and FSA to recover for damages arising out of the Incident.  Defendant FSA filed a Third Party Complaint against Thirty Acre.  Plaintiff subsequently filed a Rule 14(a) direct action against Thirty Acre.[1]

---

[1] Third party defendant Thirty Acre has not yet responded.

Defendant FSA has now filed a Motion for Summary Judgment based solely on the allegation that plaintiff failed to provide written notice within 30 days of the claim arising, as is noted in the construction contract between FSA and the Winkelrieds. Plaintiff asserts that the notice provision in the contract was only intended to apply during the period in which the defendant FSA was actually performing services. The Incident occurred long after the building was completed, the occupancy permit was issued, and defendant FSA's services were completed. Accordingly, the notice provision is not applicable to this particular claim.

Even if the notice provision is applicable, defendant received notice of the Incident within 30 days of the Incident. Defendant relies exclusively on the allegation that neither the Winkelrieds nor plaintiff sent a formal notice letter to defendant FSA until March 1, 2005. However, FSA was on actual notice of the loss within days of it occurring. FSA was provided notice by John Trebby of Thirty Acre, who was acting as the Winkelrieds' agent for purposes of the Property following the Incident. FSA admits that inspections were made on its behalf by Consulting Engineering Services, Inc. ("CES") in January, February and March of 2004 and that FSA, itself, assisted in those investigations. On February 16, 2004, CES sent a letter to FSA detailing the reasons for the Pipe freezing and recommending design changes to prevent future pipe freeze-ups at the Property.

The purpose of a notice provision is to provide a party with a reasonable opportunity to investigate the loss. In this case, FSA was admittedly on notice of the Incident and took the opportunity to do an investigation shortly after the loss. In fact, it appears that FSA's representatives may have examined the loss before plaintiff's retained engineers were able to examine it. Under these circumstances, it would be inequitable to deny plaintiff's claim simply because plaintiff provided written notice more than thirty days after the loss. At the very least, there are factual issues with regard to the time and manner of notice provided to defendant FSA.

Even if the Court determines that strict compliance with the formality of written notice is a prerequisite assert a claim against the contractor and that this did not occur through Trebby, plaintiff's March 1 letter was within thirty days of the claim arising. Plaintiff asserts that the "discovery rule" is applicable to this case, and that the claim did not arise until plaintiff was aware that it had a potential claim against defendant FSA. This did not occur until plaintiff's retained engineers, ISE, examined the Property on February 2, 2005. Accordingly, the thirty day notice period and any pertinent statute of limitations do not begin to run until February 2, 2005. At the very least, there are factual issues as to when plaintiff should reasonably have been aware it had a claim against defendant FSA.

## II.   FACTUAL SUMMARY

On March 30 1999, the Winkelrieds entered into a contract with FSA for the design of the Property ("the Contract"). (See Exhibit A, Contract). The Contract is for the Project, which is described as follows: "[FSA] shall prepare Deisgn and Construction Documents for anew shingle-style residence in Nantucket of approximately 6,000 square feet, a separate Guest House with three bedrooms and a three-bay garage with a Caretaker's apartment." (See id. at p. 1). Article 2 of the Contract defines the scope of defendant FSA's services to include 3 phases and defines those phases: (1) Design Phase (Article 2.2); (2) Construction Document Phase (Article 2.3); and (3) Construction Phase –Administration Of The Construction Contract (Article 2.4). (See id at p. 2). Article 2.4.13 states that FSB "shall conduct inspection to determine the dates of Substantial Completion and final completion and shall issue a final Certificate of Payment. (See id. at p. 2).

On January 19, 2004, a massive water leak was discovered at the Property . At the time of the Incident, the Winkelrieds were not at the Property and the damage was discovered by the Winkelrieds' caretaker Ted Storm. Storm notified the Winkelrieds and John Trebby. Because

the Winkelrieds were not at the Property, they relied on Trebby to deal with the emergency restoration. Trebby notified defendants W.B. Marden and FSA about the Incident and both had representatives at the scene. (See Exhibit B, Answers of Defendant Marden to Plaintiff's Interrogatories; Exhibit C, Answers of Defendant FSA to Plaintiff's First Set of Interrogatories). Marden was at the scene within an hour of the discovery of the leak. (See Exhibit B at Answer #2). In its Answers to Plaintiff's Interrogatories, defendant FSA admits that CES performed an investigation on its behalf in January, February and March of 2004 and that FSA "assisted CES in its investigation." (See Exhibit C at Answer #2). On February 16, 2004, CES sent a letter to FSA confirming its inspection of the Property on February 11, 2005 and described the exact location where the frozen pipe was located. (See Exhibit D, letter 2/16/05 from CES to FSA).[2] The letter also recommended design changes to avoid future pipe freeze-ups at the Property. (See Exhibit D.)

  Due to the fact that the Incident occurred on the Island of Nantucket in the middle of the winter, it was difficult for plaintiff to get an engineer out to the Property to examine the Pipe and determine the mode of failure. As soon as was reasonably practicable, on February 2, 2005, plaintiff's engineers, Industrial Services & Engineering, Inc. ("ISE"), inspected the Property and determined that the Pipe failed as a result of freezing and also that the Pipe was not installed in accordance with the International and Massachusetts Building Codes. (See Exhibit E, Affidavit of Robert Caplan). Plaintiff subsequently determined that defendant Marden was the installer of the Pipe. On February 17, 2005, plaintiff sent a notice letter to defendant Marden and invited them to inspect the loss. (See Exhibit F, Notice Ltr. to Marden). Neither plaintiff nor its insured

---

[2] On March 1, 2004, plaintiff's counsel was faxed page 1 of this letter by Ron Emond of Arbella Protection Insurance Company, the liability for insurer for defendant Marden. Plaintiff does not have any other pages of this report.

5

had a copy of the Contract at the time of the Incident.[3] On February 25, plaintiff's counsel received an email from Ron Emond of Arbella Insurance Company, the liability insurer for defendant Marden. On March 1, 2004, plaintiff's counsel received a fax from Emond attaching page one of the letter from CES to FSA. (See Exhibit E). On that same day, plaintiff sent a notice letter to FSA. (See Exhibit I, Notice Ltr to FSA).

### III.    LEGAL ARGUMENT

#### A.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes the grant of summary judgment only when the moving party demonstrates that, based on the pleadings, depositions, answers to interrogatories and affidavits, no genuine dispute as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co., 321 F. Supp. 2d 260 (D. Mass. 2004). In determining whether summary judgment is appropriate, the court must view the entire record in the light most favorable to the non-moving party. Id. Summary judgment is permitted only in the clearest of cases. Id. When determining whether disputed facts are genuine, the court must review the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Gunther v. Gap, Inc., 1 F. Supp. 2d 73 (D. Mass. 1998).

---

[3] The contract attached to the Summary Judgment Motion was the first time plaintiff's counsel had seen a copy of the contract. Defendant FSA has never actually produced a copy of the Contract or any other documents. In its Initial Disclosures and Response to Request for Production of Documents, defendant FSA indicated that the documents would be made available at its offices in New York city for plaintiff to review. (See Exhibit G, Defendant FSA's Initial Disclosures; Exhibit H, Defendant FSA's Response to Plaintiff's Request for Production of Documents). Plaintiff plans to address the lack of production with the Court in the future.

6

**B.    THE THIRTY DAY NOTICE PROVISION IN THE CONTRACT IS ONLY APPLICABLE TO CLAIMS BROUGHT WHILE FSA IS STILL PERFORMING SERVICES UNDER THE CONTRACT**

The thirty day notice provision in the Contract is not applicable to this matter because it is only applicable to claims brought under the agreement while FSA is still performing services under the agreement. The scope of FSA services are defined by Article 2 of the Contract and include three distinct phases: (1) Design Phase; (2) Construction Document Phase; and (3) Construction Phase –Administration Of The Construction Contract (Article 2.4). Article 2.4.13 states that FSB "shall conduct inspection to determine the dates of Substantial Completion and final completion and shall issue a final Certificate of Payment. Once this is final stage is completed and the Certificate of Payment is issued, FSA services under the Contract were complete. The Incident did not occur until long after the project was completed and the Winkelrieds were actually occupying the Property. Accordingly, FSA services under the Contract were completed and the notice provision is not applicable. Once the project was substantially completed and the FSA services on the project were completed, the time period for placing FSA on notice of a claim would be governed by the Massachusetts Statute of Repose, not the Contract.

If the Court deems that the contractual notice provision survives the end of the project, there are at least factual questions with regards to whether the parties intended the notice provision to apply after the services under the Contract were complete.

**C.    DEFENDANT FSA WAS PROVIDED NOTICE OF INCIDENT WITHIN THIRTY DAYS BY THE WINKELRIED'S AGENT**

Even assuming arguendo that the notice provision is applicable, notice of the Incident was provided to FSA and FSA had representatives on site investigating the Incident within days of the loss. The Incident occurred on Nantucket in the middle of the winter. At the time of the Incident, the Winkelrieds, like most seasonal home owners during the winter, were not on the

Island. John Trebby of Thirty Acre was on Nantucket and was able to get to the Property. Once the Incident occurred, the Winkelrieds delegated responsibility for dealing with the Incident to him. The Winkelrieds charged Trebby with handling emergency repairs. The Winkelrieds directed its insurer, plaintiff Great Northern, to go through Trebby to get access to the Property. After the Incident, Trebby became the Winkelrieds' agent for purposes of dealing with the Property and the remediation.[4] Trebby apparently provided notice to both defendants Marden and FSA about the Incident.[5] At this time, Trebby was acting as the Winkelrieds' agent, therefore, notice by him is sufficient to meet the thirty day notice requirement in the Contract.

Even if the notice by Trebby did not comply with the strict wording of the notice provision, it would inequitable to allow defendant FSA to avoid liability for its negligence based on this provision, when it was clearly aware of the Incident and had its representatives at the Property investigating the Incident within thirty days. The very purpose of the notice provision is to provide FSA the opportunity to promptly investigate such a claim so it can defend the claim. Defendant FSA was offered the opportunity to investigate the claim and availed itself of that opportunity. Defendant FSA admits that CES performed an investigation on its behalf in January, February and March of 2004 and that FSA "assisted CES in its investigation." (See Exhibit C at answer #2). On February 16 2004, CES sent FSA a letter describing exactly where the pipe freeze occurred and recommending corrections to the design to ensure that there would not be freezing of other pipes. (See Exhibit D).

Under these circumstances, it would be inequitable to deny plaintiff's claim simply because plaintiff or its insured may have not have provided written notice within thirty days of

---

[4] Plaintiff denies that Trebby or Thirty Acre was acting as the Winkelrieds' agent prior to the Incident.
[5] Because no depositions have been taken, the time and manner of this notice is unclear. Discovery on this issue is necessary before the summary judgment motion can be considered.

the Incident. At the very least there are factual issues relating to time period and manner of notice which make summary judgment inappropriate.

### D. PLAINTIFF'S CLAIM DID NOT ARISE UNTIL PLAINTIFF WAS AWARE IT HAD A POTENTIAL CLAIM AGAINST DEFENDANT FSA

In addition to the fact that the Winkelrieds provided notice to defendant FSA through its agent John Trebby, the plaintiff also provided written notice of claim to FSA within thirty days of the cause of action arising. Section 12.3 of the Contract, which defendant relies on exclusively for its motion, states as follows:

> Each party hereto must notify the other, in writing, of the substance of any claim against the other within 30 days after such claim has arisen. In the event such notice of claim is not given, such claims shall be deemed waived by the owner of such claim.

The thirty day time period in this provision does not start to run until the claim against the particular party "has arisen." Plaintiff's claim against defendant FSA did not arise until plaintiff's engineers inspected the Property and determined that the Pipe froze because it was not installed in accordance the International and Massachusetts Plumbing Codes. This did not occur until February 2, 2005. Prior to February 2, 2005, plaintiff was not aware that there was any potential claim against defendant FSA and, therefore, the claim had not yet arisen.

Massachusetts recognizes the "discovery rule" under which a cause of action does not accrue until the plaintiff learns or reasonably should have learned that he has been injured by the defendant's conduct. Fidler v. Eastman Kodak Co., 714 F.2d 192, 196 (1st Cir. 1983); Franklin v. Albert, 381 Mass. 611, 612, 411 N.E.2d 458, 460 (1980). Notice to the plaintiff includes "not only knowledge that one had been injured but knowledge of its cause – that plaintiff '**has been harmed as a result of defendant's conduct**.'" 714 F.2d at 198 (quoting Olsen v. Bell Laboratories, Inc., 445 N.E.2d 609, 611 (Ma. 1983)(emphasis added). Because the discovery rule requires cognizance of both injury and cause, it necessarily sets the date of accrual at the

9

later of the times when the breach and the damage are discovered. Id. at 197.  Ordinarily when a plaintiff knew or should have known of her cause of action is a factual issue to be decided by a trier of fact.  Phinney v. Morgan, 39 Mass. App. Ct. 202, 209, 654 N.E.2d 77, 82 (1995)

In Hendrickson v. Clark, the Supreme Judicial Court of Massachusetts adopted the discovery rule for the first time in a case involving attorney malpractice. 365 Mass. 83, 310, N.E.2d 131 (1974).  In adopting this equitable doctrine, the court relied on the fact that attorney was an expert and his malpractice was not immediately recognizable by the client.  Id. at 90, 310 N.E.2d at 136.  The Court noted, "the attorney, like the doctor, is an expert, and much of his work is done out of the client's view.  The client is not an expert, he cannot be expected to recognized professional negligence if he sees it."  Id.

Defendant FSA is an architect, and is therefore, like doctors and lawyers, purportedly an expert in its field.  The professional negligence on the part of FSA in improperly designing the placement of the pipe is not something which either plaintiff or its insured would be aware without guidance from some type of expert.  While it may have been apparent that plaintiff's insured was injured on January 19, 2005, by the water leak from the Pipe, it was not immediately apparent that defendant FSA's negligence was the cause of the injury.  Plaintiff was not aware that it had a claim against defendant FSA until February 2, 2005, when ISE inspected the loss site and the freezing of the Pipe was due in part to the Pipe being installed in an unheated space in violation the International and Massachusetts Building Codes.  Accordingly, plaintiff's claims against defendant FSA did not arise until February 2, 2005.  At the very least there is a factual issue for the jury as to when plaintiff should reasonably have been aware that it had a claim against defendant FSA.

### E. SUMMARY JUDGMENT IS NOT PROCEDURALLY PROPER AT THIS TIME BECAUSE PLAINTIFF HAS NOT HAD AN OPPORTUNITY TO CONDUCT DISCOVERY

A nonmoving party must have adequate opportunity to discover material facts supporting its claim before summary judgment can be granted. Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000). The First Circuit Court of Appeals has emphasized the "critical importance" of discovery in the summary judgment context and has held that summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information. Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10 (1st Cir. 1983.). Summary judgment is not appropriate were a party has not had the opportunity for discovery when the party can articulate what discovery is needed.

The only discovery which has taken place at this point in time is the exchange of written discovery. There have not been any depositions taken. The written discovery which has been exchanged has been limited. Defendant FSA responded to plaintiff's Interrogatories and Requests for Production of Documents but has refused to actually produce any documents, including a copy of the Contract that it now relies on in seeking summary judgment. In both its Initial Disclosures and Response To Request For Production of Documents, defendant FSA indicated that its documents would be made available for inspection at its offices in New York City. (See Exhibits G & H). Plaintiff asserts that this is not appropriate and had planned to raise this issue with the Court. However, defendant FSA surprisingly filed this Motion for Summary Judgment before plaintiff had an opportunity to do so.

There are clearly issues relevant to the disposition of this motion which require additional discovery. The first issue is the intent of the parties with regard to whether or not the notice provision in the Contract was intended to continue to apply after defendant FSA's services under the Contract were completed. This will require depositions of the parties to the Contract.

Another critical issue which requires discovery is the time and manner in which defendant FSA was placed on notice by Trebby. Trebby's company Thirty Acre is now a party to this litigation. It will be necessary to depose him in order to find out more about the circumstances surrounding the notice to FSA. Finally, there is a genuine issue of material fact with regard to when it was reasonable for plaintiff to know that it had a claim against defendant FSA. Discovery must be done relating to the investigation of this matter before a determination on the reasonableness can be made. Accordingly, defendant's motion should be denied or, at the very least, stayed by the Court, until discovery can be done on these issues.

## IV. CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests that this Honorable Court deny defendant's Motion for Summary Judgment.

                                        Respectfully submitted,

                                        COZEN O'CONNOR

                                        s/ Robert M. Caplan
                                        ROBERT M. CAPLAN, ESQUIRE
                                        DANIEL J. LUCCARO ESQUIRE
                                        1900 Market Street, 3rd Floor
                                        Philadelphia, PA 19103
                                        215.665.4191

Local Counsel:
Patrick J. Loftus, III, Esquire
9 Park Street, #500
Boston, MA  02108
617.723.7770

## CERTIFICATE OF SERVICE

I hereby certify that on November 4th, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record.

Jay S. Gregory, Esquire
World Trade Center East
Two Seaport Lane
Boston, MA 02210

Kathleen C. Tulloh Brink, Esquire
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111

John F Gleavy, Jr, Esquire
Lynch & Lynch
45 Bristol Drive
So.Easton, MA 02375

Martin S. Cosgrove, Esquire
Cosgrove, Eisenberg & Kiley, PC
803 Hancock Street
Quincy, MA 02170

I further certify that I sent a copy of the foregoing via regular mail to:

Thirty Acre Wood, LLC,
43 Nobadeer Farm Road,
Nantucket, MA 02554.

s/ Robert M. Caplan
ROBERT CAPLAN, ESQUIRE